**BROADCAST MUSIC, INC.**

v.

**XANTHAS, INC. d/b/a TAC Amusement Company, and John J. Elms, Jr.**

Civ. A. No. 86–5045.

United States District Court, E.D. Louisiana.

Oct. 30, 1987.

554

Jonathan Zavin, Marya Lenn Yee, Zavin, Sinnreich & Wasserman, New York City, Earl S. Eichin, Jr., O'Neill, Eichin & Miller, New Orleans, La., for plaintiff.

Valerie Oxner, New Orleans, La., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROBERT F. COLLINS, District Judge.

Plaintiff, Broadcast Music, Inc., filed this cause of action alleging 182 instances of copyright infringement violations under 17 U.S.C. § 101 *et seq.* On September 25, 1987, plaintiff moved for summary judgment. That motion was granted, insofar as the Court permanently enjoined defendants from infringing any copyrights that plain-tiff currently holds. On October 2, 1987, defendants Xanthas, Inc. d/b/a TAC Amusement Company, and John J. Elms, Jr., moved the Court to stay proceedings against them by reason of bankruptcy. That motion was granted only as to defendant, John J. Elms, Jr. The Judgment that will now be rendered in this case is only as to defendant, Xanthas, Inc. d/b/a TAC Amusement Company.

On October 22, 1987, the matter came on for trial. After considering the evidence, the relevant law, and the arguments of counsel, the Court now makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. Plaintiff, Broadcast Music, Inc. (BMI), is a New York corporation with its principal office located at 320 West 57th Street, New York, New York. BMI is a non-profit-making performing rights licensing organization that obtains the public performing rights in copyrighted music and collects royalties to be distributed to the artists.

2. Defendant, Xanthas, Inc., is a Louisiana corporation with its primary place of business in New Orleans, Louisiana. Defendant, Xanthas, Inc., has done and is doing business in the State of Louisiana under the names TAC Amusement Co., TAC Amusement, Inc., AMC, Automatic Music Company and Southern Amusement and Music Company.

3. Defendant, John J. Elms, Jr., is a resident of New Orleans, Louisiana. Defendant, John J. Elms, Jr., is an officer, director and shareholder of defendant, Xanthas, Inc., and is one of the individuals specifically responsible for, and benefitting from, the acts of defendant, Xanthas, Inc.

4. Defendant, Xanthas, Inc., for its business, owns and operates hundreds of coin-operated phonorecord players ("juke boxes"), video games, pinball machines and billiard tables which it places in various establishments for profit.

5. On May 10, 1986, at least eight musical compositions for which plaintiff owns

the public performance rights were publicly performed on a juke box located at Florida Junction, 13431 Florida Boulevard, Baton Rouge, Louisiana 70816.

6. On May 20, 1986 and May 21, 1986, at least eleven musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Mia Cherie's a/k/a Mai Cher's, 16467 Florida Boulevard, Baton Rouge, Louisiana 70816.

7. On June 7, 1986, at least twelve musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Johnny's Pizza House # 28, 14265 Old Hammond Highway, Baton Rouge, Louisiana 70816.

8. On July 14, 1986 and July 23, 1986, at least five musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Godfather's Pizza, 6601 Veterans Memorial Boulevard, Metairie, Louisiana 70003.

9. On July 17, 1986 and July 18, 1986, at least four musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Luc Eddie's Cocktail Lounge, 2725 Mississippi Avenue, Metairie, Louisiana 70003.

10. On July 27, 1986, at least six musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Johnny's Pizza, 14030 Plank Road, Baker, Louisiana 70062.

11. On August 18, 1986 and September 19, 1986, at least thirteen musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Racitback a/k/a Rack–It Bar, 11463 Plank Road, Baker, Louisiana 70714.

12. On August 26, 1986, at least five musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Steak & Egg Kitchen, 2239 Williams Boulevard, Kenner, Louisiana 70062.

13. On September 7, 1986, at least five musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Johnny's Pizza, 3404 Drusiliar Lane, Baton Rouge, Louisiana 70809.

14. On September 9, 1986, at least seven musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Pizza Inn, 5580 Government Street, Baton Rouge, Louisiana 70806.

15. On September 10, 1986, at least nine musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Jody's Seafood Restaurant & Oyster Bar, 5680 Plank Road, Baton Rouge, Louisiana 70805.

16. On September 14, 1986, at least eleven musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Europe's Restaurant a/k/a Europe's Pizza, 6764 Airline Highway, Baton Rouge, Louisiana 70805.

17. On September 26, 1986, at least ten musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Pastime Restaurant & Lounge, 252 South Boulevard, Baton Rouge, Louisiana 70062.

18. On October 2, 1986, at least eleven musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Patio Lounge, 8743 Jefferson Highway, Baton Rouge, Louisiana 70809.

19. On October 5, 1986, at least seven musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Johnny's Pizza, 12451 Jefferson Highway, Baton Rouge, Louisiana 70816.

20. On October 11, 1986, at least ten musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Sal's Lounge, 5032 West Esplanade Avenue, Metairie, Louisiana 70006.

21. On November 3, 1986, at least eighteen musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Marie's Check Mate Lounge, 8384 Airline Highway, Baton Rouge, Louisiana 70815.

22. On November 4, 1986, at least four musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Steak & Egg Kitchen, 3647 Veterans Boulevard, Metairie, Louisiana 70002.

23. On November 5, 1986, at least eight musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Steak & Egg Kitchen, 7733 Florida Boulevard, Baton Rouge, Louisiana 70806.

24. On November 7, 1986, at least six musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Bungalow Lounge, 5908 Airline Highway, Baton Rouge, Louisiana 70805.

25. On November 15, 1986 and November 17, 1986, at least six musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Le Meledy, 3124 Loyola Drive, Kenner, Louisiana 70065.

26. On November 20, 1986, at least six musical compositions for which plaintiff owns the public performance rights were publicly performed on a juke box located at Godfather's Pizza, 3600 Williams Boulevard, Kenner, Louisiana 70065.

27. The Court finds that on the relevant dates noted above, defendant Xanthas owned and operated each of the juke boxes located at the establishments and addresses identified in the preceding paragraphs.

28. On the relevant dates noted above, defendant Xanthas had not registered its juke boxes with the Copyright Office of the United States, in contravention of the requirements of 17 U.S.C. § 116.

29. On the relevant dates noted above, defendant Xanthas or its predecessors in interest (all of whom are members of the Elms family) knew of the registration requirements for juke boxes and willfully neglected to apply for the required registrations.

30. Defendant knew of the registration requirements because:

(a) defendant had registered juke boxes in 1978, 1979, 1980 and 1981;

(b) in 1985 and 1986, plaintiff BMI, through its attorneys, sent letters to defendant reminding it of the registration requirements;

(c) defendant is a member of the trade organization, American Machine Operators Association, which trade organization encourages registration;

(d) defendant was in continuous receipt of trade publications, such as "Replay" and "Vending Times" which discussed the registration requirements; and

(e) defendant and its agents have received correspondence from the American Society of Composers, Authors and Publishers noting defendant's failure to register and requesting that defendant do so.

31. From 1984 to 1986, inclusive, defendant Xanthas did not register any juke boxes in its ownership or control.

32. The compositions involved are works of original authorship, all of which have been registered with the United States Copyright Office in compliance with all copyright formalities. The assignment to plaintiff of the performing rights in each composition is also on file with the Copyright Office.

33. Defendant did not receive a license, permission, or consent from plaintiff, plaintiff's representatives, or the respective copyright proprietors for such performances.

34. Plaintiff BMI is the assignee of the performing rights in each of the 182 compositions identified in the Amended Complaint. The assignment to plaintiff of the performing rights in each composition is on file with the United States Copyright Office.

35. To the extent that these Findings of Fact also constitute Conclusions of Law,

they are specifically adopted as both Findings of Fact and Conclusions of Law.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue is proper in this district.

2. This Court has personal jurisdiction over defendant, Xanthas, Inc. d/b/a TAC Amusement Company.

3. The Copyright Act codified in Title 17 of the United States Code provides the owner of a copyright with the exclusive right, subject to express limitations, to perform or to authorize performance of copyrighted works. *See* 17 U.S.C. § 105 *et seq.* Any person who violates the exclusive right of the copyright owner is an infringer of the copyright. Thereafter, the copyright owner may seek injunctive relief statutory damages, 17 U.S.C. § 504(c)(1) and attorneys fees and costs, 17 U.S.C. § 505.

■ 4. Defendant is liable, pursuant to 17 U.S.C. § 116, for the infringement of copyright caused by the public performance via its juke boxes of musical selections whose performing rights are owned by plaintiff, where a license was not timely obtained from the Copyright Office.

5. Defendant knew at the time it caused each of these performances that it was committing acts of copyright infringement in its failure to register all its juke boxes pursuant to 17 U.S.C. § 116.

6. Defendant knew at the time of its infringements that these wrongful acts would cause great injury and damage to plaintiff.

■ 7. The Court finds that defendant Xanthas' infringements are willful, given its past registration history and its continuing refusal to register its juke boxes for the current year.

8. The copyright statute permits the copyright owner to elect to recover statutory damages instead of the copyright owner's actual damages and the infringer's profits. 17 U.S.C. § 504(c)(1). *See Broadcast Music, Inc. v. Fox Amusement Co., Inc.*, 551 F.Supp. 104, 108 (N.D.Ill.1982); *Broadcast Music, Inc. v. Question Mark*, 220 U.S.P.Q. 531 (N.D.Tex.1983). Once the plaintiff makes such an election, as the plaintiff herein does, the Court, pursuant to section 504(c)(1), shall impose statutory damages between $250 and $10,000 per infringement. If there has been a showing that the infringement was willful, as has been shown here, the Court may increase the statutory award up to $50,000 per infringement. 17 U.S.C. § 504(c)(2).

■ 9. The Court finds that a proper measure of damages for willful copyright infringements involving an unregistered juke box is a figure equal to three times the amount of unpaid registration fees.

10. The records of the Bankruptcy Court in the matter of *In re Xanthas, Inc.*, 85–01931 K (E.D.La.), reveal ownership by Xanthas, Inc. of at least 586 juke boxes in 1984.

11. The Court finds that defendant Xanthas owned and operated at least 584 juke boxes in 1985, 1986 and 1987. Of these, only 27 juke boxes have been proven to be registered in 1987.

■ 12. The Court finds that rounding off the number of juke boxes that defendant Xanthas owned in 1984—1987 to 500 per year is in the best interest of justice.

13. The Court will award statutory damages as follows:

| (a) | 1984 | 500 unregistered juke boxes | $50 registration fee |
| | | $25,000.00 × 3 = $ 75,000.00 | |
| (b) | 1985 | 500 unregistered juke boxes | $50 registration fee |
| | | $25,000.00 × 3 = $ 75,000.00 | |
| (c) | 1986 | 500 unregistered juke boxes | $50 registration fee |
| | | $25,000.00 × 3 = $ 75,000.00 | |
| (d) | 1987 | 500 unregistered juke boxes | $63 registration fee |
| | | $31,500.00 × 3 = $ 94,500.00 | |
| | | $319,500.00 | |

14. Section 505 of the Copyright Act, 17 U.S.C. § 505, provides that the Court may award reasonable attorneys' fees and costs to the prevailing party in an action based on copyright infringement.

15. Factors relevant to determining the amount of attorneys' fees include the standing of both parties' counsel at bar, time and labor spent on the case, and the magnitude and complexity of the case. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). In this Circuit, attorneys' fees in a copyright infringement action are the rule rather than the exception and "should be awarded routinely." *Micromanipulator Co., Inc. v. Bough*, 779 F.2d 255, 259 (5th Cir.1985), *citing Engel v. Teleprompter Corp.*, 732 F.2d 1238, 1241 (5th Cir.1984).

16. In instituting this action, BMI, a not-for-profit-making organization, is fulfilling its mandate under section 116 of the Copyright Act to ensure that juke boxes are registered, and that commercial users of music pay their statutorily required fees for the benefit of the creators and publishers of that music. BMI is specifically named in the statute as one of the performing rights societies designated to receive annual registration fees for juke boxes from the Copyright Royalty Tribunal. The Copyright Office does not and cannot enforce the registration requirements of the law; the statutory scheme enacted assumes that performing rights societies such as BMI will take action to protect the writers and publishers of copyrighted music. The Court will therefore award reasonable attorneys' fees in this matter and will order that plaintiff submit a bill for attorneys' fees and costs within ten (10) days of entry of Judgment.

## JUDGMENT

In accordance with the Court's Findings of Fact and Conclusions of Law of October 30, 1987,

IT IS ORDERED, ADJUDGED AND DECREED that JUDGMENT be entered in favor of plaintiff, Broadcast Music, Inc., and against defendant, Xanthas, Inc. d/b/a TAC Amusement Company, in the amount of THREE HUNDRED NINETEEN THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($319,500.00); interest to run from date of Judgment; plaintiff to submit a bill of costs and fees within ten (10) days of Judgment.